**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (SBN 272996)
Tanya S. Koshy SBN (277095)
apersinger@tzlegal.com
tkoshy@tzlegal.com
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone (510) 254-6808
Facsimile (202) 973-0950

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com
Andrea R. Gold (*pro hac vice* forthcoming)
agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**GREG COLEMAN LAW PC**
Rachel Soffin (to be admitted *pro hac vice*)
rachel@gregcolemanlaw.com
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone (865) 247-0080
Facsimile (865) 522-0049

*Attorneys for Plaintiff Teresa Hale*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERESA HALE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATERA, INC.,<br><br>Defendant. | **Case No.** 3:19-cv-1402<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Teresa Hale, through her undersigned attorneys, on behalf of herself and all persons similarly situated, complains against Natera, Inc. ("Natera" or "Defendant"), as follows:

## INTRODUCTION

1. Plaintiff Hale is a 64-year-old woman who had never had any contact with Natera—a provider of numerous genetic tests to doctors with patients who are pregnant or wishing to become pregnant. Plaintiff had neither sought health care in relation to pregnancy nor ever sought genetic testing from Natera through a health care provider. Nonetheless, on April 25, 2018, Plaintiff's cell phone rang, indicating that she had received text message. The text message stated that Natera had received a test order from a doctor that Plaintiff did not have:

> Natera received a test order from your doctor! Track your test in our Patient Portal(https://my.natera.com/users/sign_up) using Case ID 1777499. Reply STOP to opt out.

Not only did the text message invade Plaintiff's privacy, and subject her to aggravation, it alarmed her that a physician may have ordered a test for her that she knew nothing about, from a company she had never heard of.

2. By sending unauthorized text messages to Plaintiff and individuals throughout the nation, Natera violated federal law and caused them concrete harm.[1] Specifically, by effectuating these unauthorized text messages, Natera has violated individuals' statutory and privacy rights and has caused individuals actual harm, not only because individuals were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because individuals frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. Accordingly, Plaintiff brings this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Natera in sending text messages to Plaintiff on her cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

---

[1] Text messages are "calls" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Legg v. Voice Media Group, Inc.*, 990 F.Supp.2d 1351, 1354 (S.D. Fla. 2014) ("These provisions [of the TCPA] apply with equal force to conventional telephone calls and text messages, as a text message qualifies as a 'call' within the meaning of the TCPA.").

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). Plaintiff and Class Members have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs, and is a class action in which any Member of the Class of Plaintiff is a citizen of a state different from any Defendant.

5. This Court also has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, pursuant to Defendant's violation of the TCPA.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because Natera is a resident of this District and significant events giving rise to this case took place in this District.

## PARTIES

7. Plaintiff Teresa Hale is a citizen residing in Kansas City, Missouri.

8. Defendant Natera is a Delaware corporation with its principal place of business at 201 Industrial Road, Suite 410, San Carlos, CA 94070.

## COMMON ALLEGATIONS OF FACT

**I.   The TCPA**

9. The TCPA exists to prevent communications like the ones described within this complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

10. Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive telemarketing practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report

No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991).

11.    When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ." *Id.* at §§ 12-13.

12.    The TCPA's ban on telephone calls made using an automatic telephone dialing system ("ATDS" or "autodialer"), as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones. *E.g.*, FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013).

13.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**II.     Natera Sends Unsolicited Text Messages en Masse to Thousands of Cellular Phones**

14.     Natera specializes in analyzing prenatal genetic material sent to it by licensed physicians, usually via medical courier.  Natera tests must be ordered through a physician.

15.     Patients receive all health information related to any Natera genetic testing, including test results, directly from their health care providers.

16.     After Natera receives test orders from physicians, Natera sends text messages to thousands of cellular phones urging the recipient to visit the "patient portal" on Natera's website.

17.     Natera sends these text messages without ever having any direct communications with the patients.

18.     Natera also sends text messages to thousands of cellular phones regarding billing, even though Natera never has any direct communications with patients, and regardless of whether the individual has signed up for its patient portal.

19.     Natera's patient enrollment process does not include procedures necessary to confirm the accuracy of the information Natera receives from health care providers, including patients' cellular telephone numbers.

20.     As a result, Natera's patient account creation and administration processes lack steps sufficient to confirm that the cellular telephone numbers Natera receives, and to which it then sends texts, actually belong to individuals who are undergoing genetic testing using Natera.

21.      Since Natera has no direct contact with patients, and does not confirm that the cellular telephone numbers it indirectly receives are accurate, Natera routinely sends unsolicited text messages to individuals who are not seeking genetic testing through health care providers and who never provided consent to receive text messages from Natera.

22.     Natera sends its text messages using short codes, including the short code 447-79.  A short code is a special number for text messages sent to cellular subscribers.  Short codes are unique 5- or 6-digit numbers that are obtained from an independent agency that manages and assigns these

1    number resources in the United States. Companies use short codes to communicate with large
2    numbers of cellular subscribers.

3        23.   These text messages come in the form of Short Message Services. The term "Short
4    Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers
5    to use their cellular telephones to send and receive short text messages, usually limited to 160
6    characters.

7        24.   An "SMS message" is a text message directed to a wireless device through the use of
8    the telephone number assigned to the device. When an SMS message is successfully made, the
9    recipient's cell phone rings, alerting him or her that a text message is being received.

10       25.   Upon information and belief, Natera utilized a combination of hardware and software
11   systems to send the text messages at issue in this case. The systems utilized by Natera have the current
12   capacity or present ability to generate or store random or sequential numbers or to dial sequentially
13   or randomly at the time the text message is sent, and to dial such numbers, en masse, in an automated
14   fashion and without human intervention.

15       26.   The systems utilized by Natera to transmit the subject text messages also stores
16   numbers and dials them automatically to send text messages to a stored list of phone numbers as part
17   of scheduled campaigns. *See Marks v. Crunch San Diego*, LLC, No. 14-56834, 2018 U.S. App.
18   LEXIS 26883, at *27 (9th Cir. Sep. 20, 2018).

19       27.   The impersonal and generic nature of Natera's text message, *see* Ex. 1,[2] demonstrates
20   that Natera utilized an ATDS in transmitting the messages. *See Kramer v. Autobytel, Inc.*, 759 F.
21   Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where
22   messages were advertisements written in an impersonal manner and sent from short code); *Robbins
23   v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at
24   *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of
25   an ATDS)).

---

[2] Attached hereto at Exhibit 1 is a photograph of the text message that Plaintiff Hale received from Natera.

28. Natera sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

29. Natera has a corporate policy to use an ATDS to text individuals just as it did to Plaintiffs' cellular telephones in this case.

30. Natera's text messages were intentionally sent to Plaintiff and the other Members of the Class defined below. On information and belief, Natera is well aware of the TCPA's prohibitions against use of autodialers in calls and text messages to consumers, but made the business decision to send these text messages anyway.

### III. **Plaintiff Teresa Hale Received an Unsolicited Text from Defendant**

31. Plaintiff Hale, a 64-year-old woman, has never been a patient of Natera, otherwise used Natera, or sought out any prenatal genetic testing services.

32. On April 25, 2018, Plaintiff's cell phone rang, indicating that a text message was being received. The "from" field of the transmission was identified as "447-79" which, as described above, is the short code utilized by Natera and its agents for the transmission of text messages en masse. The body of the text message read: "Natera received a test order from your doctor! Track your test in our Patient Portal(https://my.natera.com/users/sign_up) using Case ID 1777499. Reply STOP to opt out." *See* Ex. 1.

33. Prior to receiving this text message, Plaintiff had no prior contact with Natera.

34. At no time did Plaintiff provide consent, including any written consent, to receive the above-reference text messages or any other such wireless spam from Natera, its agents, or partner entities.

35. The automated text messages that Natera sent to Plaintiff were to a phone number for which Plaintiff is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii). The last four digits of Plaintiff's phone number are "3129."

36. The text messages originated from telephone number 447-79, a number which upon information and belief is owned and operated by Natera.

37. This number is known as a "short code," a standard 5-digit code that enables Natera to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

38. Plaintiff alleges that the text message she received from Natera violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

39. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express consent. Defendant and its employees or agents are excluded from the Class.

40. Members of the Class are so numerous that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff, it is believed that the Class is comprised of thousands of Members geographically disbursed throughout the United States. The Class is readily identifiable from information and records in the possession of Natera and third parties.

41. Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common and legal factual questions include:

   a. Whether Defendant's conduct violates the TCPA;

   b. Whether Defendant's text messages were sent for an emergency purpose;

   c. Whether Defendant obtained valid express consent from the automated text message recipients;

   d. Whether Plaintiff and Members of the Class are entitled to damages, costs, or attorneys' fees from Defendant;

  e. Whether Defendant's conduct caused Plaintiff and Members of the Class inconvenience or annoyance;

  f. Whether Plaintiff and Members of the Class are entitled to compensatory damages;

  g. Whether Plaintiff and Members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

  h. Whether Plaintiff and Members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct;

42. Plaintiff's claims are typical of the Members of the Class as all Members of the Class are similarly affected by Defendant's actionable conduct. Defendant's conduct that gave rise to the claims of Plaintiff and Members of the Class (*i.e.* using an autodialer to send unsolicited text messages to cellular phones owned by Plaintiff and Members of the Class) is the same for all Members of the Class.

43. Plaintiff will fairly and adequately protect the interests of the Class because she has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

44. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

45. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

46. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

### Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq.*)

47. Plaintiff incorporates by reference all above paragraphs as though fully repeated herein.

48. Plaintiff and the members of the class are, and at all times mentioned herein were, "person(s)" as defined by 47 U.S.C. § 153(39).

49. The text messages that Natera sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

50. The text messages from Natera also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. § 227(b)(1).

51. The TCPA prohibits the use of an ATDS or autodialer to make any call or send any text message to a wireless phone number without the prior express consent of the contacted party or in the absence of an emergency.

52. The foregoing acts and omissions of Natera constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

53. As a result of Natera's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class are entitled to an award of $500.00 in statutory damages for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3).

54. As a result of Natera's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class are entitled to an award of $1,500.00 in statutory damages for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3).

55. As a result of Natera's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class have been subjected to nuisance text messages, have been forced to waste time reviewing, deleting, and/or responding to Natera's unsolicited automated text messages, and have suffered invasions of their privacy and unwanted use of data storage space on their cellular telephones.

56. Plaintiff and Members of the Class also suffered damages in the form of text message, data, and other charges to their cellular telephone plans.

57. Plaintiff and Members of the Class are also entitled to and seek injunctive relief prohibiting Natera's illegal conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Statutory damages of $500.00 for each negligent violation of the TCPA over the last four years;
2. Statutory damages of $1,500.00 for each knowing or willful violation of the TCPA over the last four years;
3. Actual and punitive damages arising from Defendant's wrongful and illegal conduct;
4. A permanent injunction prohibiting Defendant from sending text messages via the use of an ATDS or autodialer without recipients' prior express consent;
5. Attorney's fees;
6. Litigation expenses and costs of the instant suit; and
7. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

| | |
|---|---|
| Dated: March 15, 2019 | Respectfully submitted, |
| | **TYCKO & ZAVAREEI LLP** |
| | /s/ Annick M. Persinger |
| | Annick M. Persinger (SBN 272996) |
| | Tanya S. Koshy SBN (277095) |
| | apersinger@tzlegal.com |
| | tkoshy@tzlegal.com |
| | 1970 Broadway, Suite 1070 |
| | Oakland, CA 94612 |
| | Telephone (510) 254-6808 |
| | Facsimile (202) 973-0950 |
| | |
| | **TYCKO & ZAVAREEI LLP** |
| | Hassan A. Zavareei (SBN 181547) |
| | hzavareei@tzlegal.com |
| | Andrea R. Gold (*pro hac vice* forthcoming) |
| | agold@tzlegal.com |
| | 1828 L Street, NW, Suite 1000 |
| | Washington, DC 20036 |
| | Telephone (202) 973-0900 |
| | Facsimile (202) 973-0950 |

# EXHIBIT 1

*April 25*

**44779**

SMS/MMS

Wednesday, April 25, 2018

Natera received a test order from your doctor! Track your test in our Patient Portal(https://my.natera.com/users/sign_up) using Case ID 1777499. Reply STOP to opt out.

5:38 AM

7:46 AM  **STOP**

Your number has been opted out of our list

7:46 AM